# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Anthony Austine Ukofia, | Civil No. 09-0017 (PJS/JJG) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| Department of Homeland Security, Amy Zaske, Terry Louie, Jared Drengson, Bureau of Immigration & Customs Enforcement, Kenneth Olson, Five Other Unknown Deportation Officers of the Bureau of Immigration & Customs Enforcement, Sherburne County Jail, Sherburne County Jail Clinic, Cari, a nurse at the Clinic, and Rachel Cannings, | |
| **Defendants.** | |

JEANNE J. GRAHAM, United States Magistrate Judge

Plaintiff Anthony Austine Ukofia ("Ukofia") is a Nigerian citizen who came to the United States on a student visa in 1981. On May 29, 2008, he was ordered removed after being convicted of an aggravated felony. *See Ukofia v. Holder*, Nos. 09-1264, 09-1793, 2010 WL 45980, at *1 (8th Cir. Jan. 8, 2010) (per curiam) (unpublished). Ukofia was deemed a possible flight risk because of his imminent removal, and the Bureau of Immigration and Customs Enforcement placed him in custody at the Sherburne County Jail in Elk River, Minnesota, pending his removal. In his Amended Complaint filed on February 4, 2009, Ukofia claims that his arrest, confinement, and medical treatment by state and federal officials violated 42 U.S.C. § 1983, the Federal Tort Claims Act, and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Ukofia is representing himself in this action, and he

has continued to prosecute his claims after his removal.

Presently before the Court are a Motion to Dismiss by Defendants Sherburne County Jail, Sherburne County Jail Clinic, Rachel Cannings, Cari Bancroft, and Dr. Todd Leonard (Doc. No. 11); a Motion to Dismiss by Defendants Department of Homeland Security, Bureau of Immigration and Customs Enforcement, Bureau of Immigration Appeals, Terry Louie, Amy Zaske, Jared Drengson, Scott Baniecke, Kenneth Olson, and Five Unknown Agents (Doc. No. 30); and Ukofia's Motion for Extension of Time to Plead and Renewed Request for Appointment of Counsel (Doc. No. 40). For the reasons set forth below, the Court recommends that the Motion to Dismiss by Defendants Sherburne County Jail, Sherburne County Jail Clinic, Rachel Cannings, Cari Bancroft, and Dr. Todd Leonard be granted, and that the Motion to Dismiss by Defendants Department of Homeland Security, Bureau of Immigration and Customs Enforcement, Bureau of Immigration Appeals, Terry Louie, Amy Zaske, Jared Drengson, Scott Baniecke, Kenneth Olson, and Five Unknown Agents be granted in part and denied in part. The Court also recommends that Ukofia's Motion for Extension of Time to Plead and Renewed Request for Appointment of Counsel be granted as to an extension of time but denied as to an appointment of counsel.

## I.     Ukofia's Litigation History

Ukofia has actively challenged his removal and surrounding events on several fronts. A brief summary of the other cases will aid in setting the context of this case.

Ukofia first sought to prevent his removal in a writ of habeas corpus, filed in the District of Minnesota and docketed as Civil No. 08-4778. This Court recommended on July 31, 2008, that the petition be dismissed for lack of jurisdiction because Petitioner had not exhausted his administrative remedies. *Ukofia v. Dep't of Homeland Sec.*, Civ. No. 08-4778 (PJS/JJG), Rep. &

Rec. at 4-5 (D. Minn. July 31, 2008). The Honorable Patrick J. Schiltz, United States District Judge, dismissed the action as recommended on August 20, 2008. *Ukofia v. Dep't of Homeland Sec.*, Civ. No. 08-4778 (PJS/JJG), Order at 1 (D. Minn. Aug. 20, 2008).

Ukofia commenced a new habeas action in December 2008, which was docketed as Civil No. 08-6224. He challenged the validity of the removal order and sought an immediate release from custody. This Court recommended on December 5, 2008, that the petition be transferred to the Court of Appeals for the Eighth Circuit, as required by the REAL ID Act. *Ukofia v. Mukasey*, Civ. No. 08-6224 (PJS/JJG), Rep. & Rec. at 3 (D. Minn. Dec. 5, 2008). The action was transferred to the Eighth Circuit, and on January 8, 2010, the petition was denied. *Ukofia v. Holder*, Nos. 09-1264, 09-1793, 2010 WL 45980, at *1 (8th Cir. Jan. 8, 2010) (per curiam) (unpublished).

On January 29, 2009, a few days after filing this case, Ukofia commenced a § 1983 action against several federal officials, which was docketed as Civil No. 09-184. That action was dismissed after Ukofia failed to pay the filing fee or file a proper *in forma pauperis* application. *Ukofia v. Dep't of Homeland Sec.*, Civ. No. 09-184 (PJS/JJG), Rep. & Rec. at 1-2 (D. Minn. Mar. 19, 2009); Order at 1 (D. Minn. Apr. 9, 2009).

## II.    Allegations in the Present Action

Ukofia has alleged the following facts in his Amended Complaint. On March 12, 2008, Ukofia met with Department of Homeland Security ("DHS") Agent Jared Drengson ("Drengson") at the Sherburne County Jail, in compliance with a letter Drengson had sent to Ukofia concerning a replacement resident card.[1] When Ukofia arrived at the jail, however,

---

[1]     The Amended Complaint refers to multiple exhibits, including the letter from Drengson, but the exhibits are not attached to the Amended Complaint or located anywhere in the record.

Drengson arrested him without a warrant and placed him in custody. Drengson's supervisor, Scott Baniecke ("Baniecke"), condoned Drengson's behavior and refused to remedy the alleged wrongdoing. A booking officer at the Sherburne County Jail misspelled Ukofia's name as "Vkofia," but when Ukofia complained, the officer said he could not change the spelling because "Vkofia" was the name provided by the Bureau of Immigration and Customs Enforcement ("ICE").

Mail sent from ICE to Ukofia at the Sherburne County Jail was returned numerous times in June and July 2008, presumably because it was addressed to "Vkofia." The correspondence consisted mainly of filing receipts and notices of briefing schedules for his immigration appeal. Even after an immigration judge directed Defendant Terry Louie ("Louie"), an ICE attorney, to make sure the spelling was corrected, Ukofia continued to receive mail under the name "Vkofia." The correction was finally made on August 23, 2008.

A few days later, on August 28, 2008, Ukofia was transferred to the Grand Forks Correctional Facility in North Dakota. He was confined there for eight days before being returned to the Sherburne County Jail. Legal mail sent to Ukofia during his absence was returned to the sender. Defendant Amy Zaske ("Zaske"), an attorney at DHS, sent a reply brief to Ukofia's attention at the Grand Forks Correctional Facility on September 30, 2008, even though she knew he had been returned to the Sherburne County Jail.

In November 2008, Ukofia notified correctional officer Rachel Cannings ("Cannings") that he had finished working on a legal matter in the library. Cannings perused Ukofia's documents and found a letter that Ukofia had typed for another inmate. Cannings confiscated the letter, locked Ukofia in the computer room, and took Ukofia's documents to a sergeant's office, where she and the sergeant read the documents.

Ukofia was transported to the ICE office on November 18, 2008 to sign some documents in preparation for his removal. Ukofia was concerned that wearing shackles would reinjure a recent surgical site on his ankle, but he consented to their use nonetheless. Once at the ICE office, Ukofia refused to sign the travel documents, fearing he would be removed before his appeal was decided. When he returned to the jail, he noticed his ankle was puffy and slightly uncomfortable.

On December 17, 2008, Defendant Kenneth Olson ("Olson") visited Ukofia at the Sherburne County Jail and asked if he had signed the travel documents. Ukofia said no and showed Olson a habeas corpus petition he had filed in federal court. Olson became upset and said Ukofia would face repercussions if he did not sign the forms.

The next day, Ukofia was transported without shackles to the ICE office. Although Olson was waiting for the detainees at the door, Ukofia was instructed to wait with the other detainees in a cell until Olson was ready for him. After about an hour and a half, an ICE agent entered the cell and asked if any inmates were not wearing shackles. Ukofia raised his hand, and the agent gestured he should leave the cell. Ukofia explained he had recently had surgery on his ankle, and the last time he wore shackles, his ankle became painful and swollen. Ukofia was then taken to an isolated cell, where Olson and five other ICE agents severely beat him, held him down, handcuffed him, and shackled his ankles. The agents also removed Ukofia's socks, shoes, and glasses, which they took with them, and left him alone in the cell for an hour. Ukofia suffered an inch-long cut on his knee and injuries to his shoulder, elbow, head, neck, and back.

When the transportation officer told Ukofia it was time to return to the Sherburne County Jail, Ukofia asked to see a doctor. Olson told Ukofia he would arrange for Ukofia to be treated at the jail. Defendant Cari Bancroft ("Bancroft"), a nurse at the Sherburne County Jail Clinic,

examined him Ukofia shortly after he returned. Bancroft treated and bandaged the cut on his leg but failed to take pictures of his injuries. Bancroft also promised to give Ukofia some antibacterial ointment for use in his cell the next day, but she failed to do so.

Dr. Todd Leonard ("Dr. Leonard") was the chief physician at the Sherburne County Jail Clinic. According to Ukofia, Dr. Leonard withheld medications to treat his bipolar disorder, sleeping problems, and anxiety disorder.

## III.    The Sherburne County Defendants' Motion to Dismiss

Defendants Sherburne County Jail, Sherburne County Jail Clinic, Bancroft, Cannings, and Dr. Leonard[2] (collectively "Sherburne County Defendants") move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.    Standard of Review

Dismissal under Rule 12(b)(6) is proper when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must assume the truth of the alleged facts and make all reasonable inferences in Ukofia's favor. *See Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994) (citations omitted).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

---

[2]    Although Dr. Todd Leonard is not named in the caption of the Amended Complaint, he is identified as a defendant in the body of the pleading, and Ukofia has made specific allegations against him. The Eighth Circuit has indicated that when the body of a complaint identifies an individual not named in the caption and includes allegations demonstrating that the plaintiff intended that person to be a defendant, courts should treat that person as a named defendant. *See Miller v. Hedrick*, 140 F. App'x 640, 641 (8th Cir. 2005) (unpublished) (citing *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983)). Accordingly, Dr. Leonard will be treated as a defendant.

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that are "merely consistent with" liability are insufficient to create facial plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557). A court must typically disregard matters outside the pleadings on a Rule 12(b)(6) motion, but it may take into account matters of public record, orders, documents attached to the complaint, and materials embraced by the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations and quotations omitted). A court is also expected "to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

B.      **The Sherburne County Jail and Sherburne County Jail Clinic**

Ukofia has brought suit against the Sherburne County Jail and Sherburne County Jail Clinic pursuant to 42 U.S.C. § 1983. However, Ukofia has failed to state a claim against these entities because county jails and their departments "are not legal entities amenable to suit" under § 1983. *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (citing *De La Garza v. Kandiyohi County Jail*, 18 F. App'x 436, 437 (8th Cir. 2001)).

Even if the Sherburne County entities were proper defendants, Ukofia has failed to allege sufficient facts of wrongdoing against them. For example, Ukofia claims that the Sherburne County entities failed to prevent the injuries inflicted by ICE agents at the ICE office. However, there are no alleged facts or reasonable inferences to support a finding that the Sherburne County Jail or Sherburne County Jail Clinic was in any way responsible for the alleged misconduct of ICE agents at the ICE office.

The only other specific allegation Ukofia makes against the Sherburne County entities is that the Sherburne County Jail violated § 1983 and the Federal Tort Claims Act ("FTCA") by

7

returning his mail. The FTCA claim must be dismissed because neither the Sherburne County Jail nor its employees are subject to suit under the FTCA, even though the Jail had apparently contracted to provide services to DHS, a federal agency. *See Logue v. United States*, 412 U.S. 521, 530 (1973) (holding that county jail employees were not employees of a federal agency, but merely employees of a government contractor, and therefore excluded from liability under the FTCA).

Turning to the § 1983 claim, Ukofia "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Against an entity such as the Sherburne County Jail, Ukofia must allege "that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *See Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citing *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978)).

Ukofia's § 1983 claim against the Sherburne County Jail fails on several counts. First, he has not alleged that the Sherburne County Jail had an official custom, policy, or practice to return improperly addressed mail. Second, Ukofia has not alleged he suffered actual prejudice or injury from the returned mail. "To state a valid § 1983 claim due to interference with an inmate's legal mail, an inmate must allege that a defendant's deliberate and malicious interference actually impeded [his] access to the court or prejudiced an existing action." *Turner v. Ms. Douglas*, No. 1:06CV00058, 2007 WL 87628, at *2 (E.D. Ark. Jan. 10, 2007). Ukofia concedes that although he did not receive some of his mail in June, July, and August of 2008, he received the Board of Immigration Appeals ("BIA") briefing schedule on July 31, 2008 (Am. Compl. ¶ 57), and he alleges he defeated the "conspiracy" to prevent him from filing his appellate brief (*id.* ¶ 63). The

decision of the BIA, which Ukofia attached to his complaint in Civil No. 09-184, and which the Court takes notice of as a matter of public record, was a decision on the merits, with no mention of any briefing deficiency by Ukofia. *Ukofia v. Dep't of Homeland Sec.*, Civ. No. 09-184 (PJS/JJG), Compl. Ex. 2 (D. Minn. Jan. 28, 2009). Finally, Ukofia has not alleged any facts to support an inference that the mail was returned out of malice.

### C. Bancroft

Ukofia has accused Bancroft of not taking photographs of his alleged injuries and not providing him with antibacterial ointment for use in his cell, but Ukofia fails to link Bancroft's treatment of him to any constitutional violation or legal theory. Even if the Court were to liberally construe the pleading and assume Ukofia intended to bring a deliberate indifference claim against Bancroft, that claim would fail.

The status of an immigration detainee is similar to the status of a pretrial detainee. *Harvey v. Chertoff*, 263 F. App'x 188, 191 (3d Cir. 2008); *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000). A pretrial detainee's claim for improper medical care is analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment, but the analysis is essentially the same. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (citations omitted). Under either classification, deliberate indifference is the standard by which to measure a prison official's alleged failure to provide a detainee with proper medical care. *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007) (quoting *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)). The deliberate indifference standard has two components. The detainee must allege both that he had an objectively severe medical need, and that prison officials knew of, but deliberately disregarded, that need. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quotation omitted). Ukofia has not alleged either element, nor do his allegations permit such

inferences. Although he alleged that he suffered numerous injuries at the hands of ICE agents, he identified no objectively serious medical need. The only injury requiring treatment was a small cut, which Bancroft disinfected and bandaged. There are no allegations at all concerning Bancroft's mental state, and the only inference to be drawn is that properly treated the injury she saw. Any disagreement Ukofia may now have with Bancroft's treatment decision does not suffice to state of claim for deliberate indifference. *See Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (quoting *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).

### D. Dr. Leonard

Ukofia also claims that Dr. Leonard violated his Fourteenth Amendment right to due process by withholding medications to treat his bipolar disorder, sleeping problems, and anxiety disorder. Again, Ukofia has not alleged either that he had an objectively serious medical need for these medications or that Dr. Leonard acted with the requisite mental state in withholding the medications. Thus, Ukofia has not stated a claim for relief against Dr. Leonard.

### E. Cannings

Ukofia alleges that Cannings violated the attorney-client privilege by reviewing his legal papers and confiscating a letter he typed for another inmate. The attorney-client privilege protects confidential communications between an attorney and client, made for the purpose of rendering legal advice. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977). Ukofia is not an attorney, and papers that he generated in the course of self-representation or typed for another inmate are simply not protected by the attorney-client privilege. *See Jensen v. Klecker*, 648 F.2d 1179, 1182-83 (8th Cir. 1981) (finding that documents not specially marked as from an attorney are not privileged).

### F. Conclusion

Ukofia has failed to state a claim for relief against the Sherburne County Jail, the Sherburne County Jail Clinic, Bancroft, Cannings, and Dr. Leonard, and all claims against these Defendants should be dismissed.

## IV. The Federal Defendants' Motion to Dismiss

Defendants DHS, ICE, BIA,[3] Louie, Zaske, Drengson, Baniecke,[4] Olson, and Five Unknown Agents (collectively "Federal Defendants") move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A. Standards of Review

Although the Federal Defendants captioned their motion as one to dismiss, they submitted several declarations and exhibits in support of the motion. On a motion to dismiss under Rule 12(b)(6), a court is generally limited to consideration of the allegations in the complaint. *See Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992). If a party presents matters outside the complaint, a court must decide whether to convert the motion from one to dismiss into one for summary judgment. *See Casazza v. Kiser*, 313 F.3d 414, 417-18 (8th Cir. 2002). The court should assess whether the nonmoving party has had an adequate opportunity to respond and supplement the record with material facts. *Gibb*, 958 F.2d at 816.

Conversion is not appropriate here. No discovery has been exchanged, nor has a pretrial

---

[3]     Although the BIA is not named in the caption of the Amended Complaint, Ukofia did identify the BIA as a defendant in the body of the pleading, and asserted an FTCA claim against it. Based on these allegations, the Court will treat the BIA as a named defendant. *See Miller*, 140 F. App'x at 641.

[4]     As with the BIA, Baniecke was not named in the caption of the Amended Complaint, but Ukofia indicated in the body of the pleading that he was suing Baniecke under the FTCA and *Bivens*. The Court will also treat Baniecke as a named defendant.

schedule even been set. The Federal Defendants framed their motion as one to dismiss and cited the Rule 12(b)(6) standard, which did not put Ukofia on notice that the Court would apply the summary judgment standard and require evidence to support each claim. Finally, Ukofia is likely unaware that the exhibits he intended to attach to his Amended Complaint, and on which he relies in responding to the Federal Defendants' motion, are not a part of the record. Especially considering Ukofia's pro se status, justice and fairness would not be served by converting the motion. Accordingly, the Court declines to convert the Rule 12(b)(6) motion into one for summary judgment, and the Federal Defendants' declarations and exhibits will not be considered in assessing Ukofia's claims.

The Federal Defendants have also moved to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. When such a motion is based on facial deficiencies in a complaint, a court examines only the allegations in the complaint, making all reasonable inferences in the plaintiff's favor. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003). When the motion is based on disputed facts, the Court may consider matters outside the pleadings. *See Osborn v. United States*, 918 F.2d 724, 729-30 & n.6 (8th Cir. 1990).

### B.      Ukofia's FTCA Claims

The Federal Defendants ask to dismiss Ukofia's FTCA claims because he has sued only individuals and agencies, not the United States. The FTCA provides for "a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). When a federal employee is named individually in a suit for allegedly committing tortious conduct, the United States may move to be substituted as the defendant and submit a certification that the employee was acting within the scope of

employment. *See Midland Psych. Assocs., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) (citing 28 U.S.C. §§ 2679(d)(1), (2) (1994)). But here, the United States has neither sought to be substituted nor provided the requisite certification. Consequently, it would be not appropriate at this time to substitute the United States in the place of the individual Federal Defendants.

Federal employees "may not be sued for torts they commit while acting within the scope of their employment." *Knowles v. United States*, 91 F.3d 1147, 1150 (8th Cir. 1996) (citation omitted) ("When someone is injured by a tort committed by an employee of the United States who is acting within the scope of his employment, that employee cannot be sued."). Ukofia has neither alleged nor argued that the individual Federal Defendants acted outside the scope of their employment, and the FTCA claims against them should be dismissed.

The exclusivity of the FTCA's remedy also precludes suits directly against federal agencies. *Duncan v. Dep't of Labor*, 313 F.3d 445, 447 (8th Cir. 2002). The proper defendant is the United States. *Id.* (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 476-77 (1994)). Thus, the FTCA claims against ICE, DHS, and BIA should be dismissed.

Even if the Court were to substitute the United States in place of the Federal Defendants, it would be of no benefit to Ukofia because he has not exhausted his administrative remedies.

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a); *see also Duncan*, 313 F.3d at 447. Ukofia has not alleged or submitted any

proof that he presented a claim for relief to ICE, DHS, or BIA, and the Federal Defendants aver he did not. This Court therefore lacks subject matter jurisdiction over all of Ukofia's FTCA claims, and they may be dismissed for this reason as well. *See Duncan*, 313 F.3d at 447 (citing 28 U.S.C. § 2675(a)).

### C. Ukofia's Fourteenth Amendment and § 1983 Claims

Ukofia has sued some of the Federal Defendants for violating the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. By their terms, both the Fourteenth Amendment and § 1983 apply only to state action, and thus, cannot found a claim against federal officials or agencies. *See* U.S. Const. amend XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property without due process of law"); 42 U.S.C. § 1983 (requiring action "under color of" state law).

In Ukofia's opposition memorandum, he suggests that the Federal Defendants should be liable under § 1983 for "joint action" they took with the Sherburne County Defendants, but the allegations in the Amended Complaint do not support this theory. Ukofia does not allege that the Federal Defendants acted under color of state law, only federal law. (Am. Compl. ¶¶ 12, 13, 18, 19.) Moreover, the only joint action alleged is the "conspiracy" to prevent him from filing his brief with the BIA. As discussed in Part III.B, however, this did not amount to a constitutional violation. Consequently, Ukofia has failed to state Fourteenth Amendment or § 1983 claims against the Federal Defendants.

### D. Ukofia's *Bivens* Claims Against the Federal Agencies

Ukofia has brought *Bivens* claims against both ICE and DHS. These federal agencies argue they cannot be sued under *Bivens*. Although a plaintiff may bring a *Bivens* suit against federal officials who commit constitutional violations in their individual capacities, *see Bivens*,

403 U.S. at 389, a *Bivens* claim cannot be maintained against a federal agency, *see Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *Patel v. United States Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (citing *Malesko*). Thus, Ukofia's *Bivens* claims against ICE and DHS should be dismissed.

### E. Official-Capacity *Bivens* Claims Against the Individual Federal Defendants

Ukofia has sued Zaske, Louie, Drengson, Baniecke, Olson, and five other unknown ICE officers in their individual and official capacities, pursuant to *Bivens*. The claims against these individuals in their official capacities must be treated as claims against the agencies for which they work. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because no *Bivens* action may be maintained against these agencies, the official-capacity *Bivens* claims against the individual Federal Defendants should be dismissed. *See Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998).

### F. Individual-Capacity *Bivens* Claims Against Drengson and Baniecke

Ukofia alleges that on March 12, 2008, Drengson committed false arrest, false imprisonment, abuse of process, and intentional infliction of emotional distress, in violation of *Bivens*. These intentional tort claims against a federal law enforcement officer are not cognizable under *Bivens*, but must be asserted under the FTCA. *Washington v. Drug Enforcement Admin.*, 183 F.3d 868, 873-74 (8th Cir. 1999) (stating that "victims of purposeful wrongdoing on the part of federal law enforcement officers can bring specified intentional tort claims under the FTCA and constitutional tort claims under *Bivens*"); *see* 28 U.S.C. § 2680(h) (specifically including false arrest, false imprisonment, abuse of process, and intentional infliction of emotional distress as cognizable causes of action against law enforcement officers under the FTCA). As a DHS agent empowered to arrest Ukofia, Drengson is considered a law enforcement officer under the

FTCA. *See Celestine v. United States*, 841 F.2d 851, 852-53 (8th Cir. 1988) (holding that a Veterans Administration security guard was a law enforcement officer under 28 U.S.C. § 2680(h)) (citing *Caban v. United States*, 671 F.2d 1230, 1234 n.4 (2d Cir. 1982) (finding INS agents covered by § 2680(h))). Ukofia has failed to state an individual-capacity *Bivens* claim against Drengson, because he has alleged only intentional tort claims covered exclusively by the FTCA.

With respect to Ukofia's *Bivens* claim against Baniecke, that claim also fails because *Bivens* liability does not extend to officials who acted in a supervisory capacity. *Iqbal*, 129 S. Ct. at 1948 (citations omitted).

### G.     Claims Against Louie

Ukofia has not asserted a *Bivens* claim against Louie, but only claims pursuant to § 1983 and the FTCA. (Am. Compl. ¶¶ 19, 29.) For the reasons discussed previously in Parts IV.B and IV.C, these claims should be dismissed.

Assuming *arguendo* that Ukofia meant to invoke *Bivens* in suing Louie, this claim would fail as well. Ukofia's particular allegation against Louie is that Louie failed to correct the spelling of his name, even after an immigration judge directed him to do so. Although Ukofia has not identified a specific constitutional violation, the Court will infer that he intended to accuse Louie of interfering with his First Amendment right to access the courts. Ukofia has not alleged, however, that Louie acted maliciously or that he was harmed or prejudiced in pursuing his immigration appeal. *See Turner*, 2007 WL 87628, at *2. Thus, Ukofia has not stated a *Bivens* claim against Louie.[5]

---

[5]     Because the Court concludes that Ukofia has failed to state a claim against Louie under any legal theory, the Court does not reach Louie's alternative arguments of qualified and

### H. Claims Against Zaske

As with Louie, Ukofia has sued Zaske only under § 1983 and the FTCA (Am. Compl. ¶¶ 18, 28), neither of which apply to Zaske, as a federal employee.

Assuming that Ukofia intended to sue Zaske under *Bivens*, that claim, too, would fail. Ukofia has alleged that Zaske mailed a legal memorandum to him at the Grand Forks Correctional Facility, even though she knew Ukofia had been returned to the Sherburne County Jail. But as with other defendants, Ukofia has not alleged that Zaske acted maliciously or that he was harmed or prejudiced in pursuing his immigration appeal. Any intended *Bivens* claim therefore fails.[6]

### I. Claims Against Olson and the Unnamed Federal Defendants

Ukofia is suing Olson and five unnamed ICE agents for beating him and injuring his ankle, knee, shoulder, elbow, head, neck, back, and hand, while applying handcuffs and ankle shackles on December 18, 2008.

The unnamed ICE agents argue that the claims against them must be dismissed because Ukofia did not identify them in the Amended Complaint. But as long as the allegations against the unnamed defendants are specific enough to permit the defendants to be identified through discovery, dismissal is not appropriate. *See Estate of Rosenberg*, 56 F.3d at 37. Ukofia has specifically alleged that the five unnamed agents beat him at the ICE office on December 18, 2008. This allegation is specific enough to permit the identification of the agents through discovery, and Ukofia may simply add the names by amendment at a later date. *See id.*

---

absolute immunity.

[6]     Because the Court concludes that Ukofia has failed to state a claim against Zaske under any legal theory, the Court does not reach Zaske's alternative arguments of qualified and absolute immunity.

Olson and the five unnamed agents next argue they are entitled to qualified immunity. On a motion to dismiss, the Court must answer two questions to determine if a prison official is entitled to qualified immunity: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The second element is easily satisfied. "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998) (citations omitted). Even though Ukofia's right to be free from excessive force arises under the Fourteenth Amendment, due to his status as a detainee, the Supreme Court has explained that "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). The Eighth Circuit likewise recognizes that all claims of excessive force are analyzed under an "objective reasonableness standard." *Nance v. Sammis*, 586 F.3d 604, 609-10 (8th Cir. 2009).

Under this standard, the Court considers only the facts and circumstances confronting the officers, without regard to intent or motivation. *Graham*, 490 U.S. at 397. The reasonableness of force is determined by the totality of the circumstances, such as the severity of the offense, the extent of the threat posed by the detainee, and whether the detainee was resisting arrest or attempting to flee. *Nance*, 586 F.3d at 610 (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)).

Ukofia has alleged that he was sitting in a holding cell, unshackled and unhandcuffed, with other detainees when an ICE agent entered the cell and asked if any inmates were not wearing shackles. Ukofia raised his hand, and the agent gestured he should leave the cell. Outside the cell, Ukofia explained he had recently had surgery on his ankle, and that the last time he wore shackles, his ankle became painful and swollen. The agent then took Ukofia to an isolated cell, where Olson and five other ICE agents attacked him; hit him on his thigh, shoulder, ribs, and stomach; and them slammed him on the concrete floor. One of the agents placed his foot on Ukofia's head and four others held his limbs while a sixth placed handcuffs on his wrists and shackles on his ankles. Ukofia allegedly suffered an inch-long cut on his knee, a dislocated shoulder, damage to his elbow, bruises on his head, muscle damage, and neck and back injuries.

Based on these allegations, the Court cannot conclude that the use of force was objectively reasonable. Ukofia was not in custody for a criminal offense; he was an administrative detainee involved in removal proceedings. According to Ukofia, he posed no physical threat, but was waiting in a cell for his turn to speak with Olson, and agents had previously removed his handcuffs when he first entered the cell. Throughout the altercation, he alleges he never resisted the agents or attempted to flee. Viewing the totality of the alleged circumstances, Plaintiff has sufficiently alleged a violation of his right to be free from excessive force, and Olson and the unnamed federal agents are not entitled to qualified immunity at this time.[7]

## V. Ukofia's Motion for an Extension of Time and Appointment of Counsel

In Ukofia's motion for an extension of time, he sought a brief extension to file his

---

[7] This conclusion does not bar Olson and the unnamed federal agents from seeking to invoke qualified immunity in a motion for summary judgment.

opposition to the Federal Defendants' motion to dismiss. The Court has considered Ukofia's memorandum and recommends that his request for an extension be granted.

Ukofia also renewed his request for appointed counsel, given that he is currently in Nigeria and would not be able to personally attend any hearings in this case. Although representing himself while in Nigeria is no doubt inconvenient, the Court will not reconsider its earlier ruling at this time. No hearings have been scheduled in this case, and the factors weighing against appointment of counsel remain valid.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. The Motion to Dismiss by Defendants Sherburne County Jail, Sherburne County Jail Clinic, Rachel Cannings, Cari Bancroft, and Dr. Leonard (Doc. No. 11) be **GRANTED**, and all claims against these Defendants be **DISMISSED**;

2. The Motion to Dismiss by Defendants Department of Homeland Security, Bureau of Immigration and Customs Enforcement, Bureau of Immigration Appeals, Terry Louie, Amy Zaske, Jared Drengson, Scott Baniecke, Kenneth Olson, and Five Unknown Agents (Doc. No. 30) be **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a. All claims against the Department of Homeland Security, Bureau of Immigration and Customs Enforcement, Bureau of Immigration Appeals, Terry Louie, Amy Zaske, Jared Drengson, and Scott Baniecke be **DISMISSED**;

   b. All claims, except the *Bivens* excessive force claim, against Kenneth Olson and the Five Unknown Agents be **DISMISSED**; and

3. The Motion for Extension of Time to Plead and Renewed Request for Appointment of Counsel (Doc. No. 40) be **GRANTED** as to the extension but **DENIED** as to appointment of counsel.


Dated: January 19, 2010                                         s/ *Jeanne J. Graham*

                                                                 JEANNE J. GRAHAM
                                                                 United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **February 2, 2010**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.