# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

**Anthony Austine Ukofia,**

      **Plaintiff,**

v.

**Kenneth Olson and Five Other Unknown Deportation Officers of the Bureau of Immigration & Customs Enforcement,**

      **Defendants.**

Civil No. 09-0017 (PJS/JJG)

REPORT AND RECOMMENDATION

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendants' Motion to Dismiss and for Summary Judgment (Doc. No. 78) and Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. No. 91). The case has been referred to the undersigned United States Magistrate Judge for the issuance of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that Plaintiff's motion be denied, summary judgment be granted to Defendants, and judgment entered.

## I. Plaintiff's Motion for Leave to File a Third Amended Complaint

Plaintiff Anthony Austine Ukofia ("Ukofia") moves to amend his operative complaint to reinstate Jared Drengson as a defendant. Drengson was dismissed as a defendant by the Honorable Patrick J. Schiltz, United States District Judge, on February 17, 2010 (Order at 1-2, Feb. 17, 2010; Doc. No. 49), pursuant to the recommendation of this Court (R&R at 20-21, Jan. 19, 2010; Doc. No. 43).

This is not Ukofia's first attempt to reinstate Drengson as a defendant. In a motion to amend filed on June 7, 2010, Ukofia sought to add several dismissed defendants back into the case. (Pl.'s

Mot. Amend Compl. at 1-2; Doc. No. 58.) This Court found that the proposed amendments would be futile and denied leave to amend. (Order at 4, Sept. 13, 2010; Doc. No. 71). Additionally, the Court found no basis to reconsider the original decision to dismiss because Ukofia did not introduce substantially different evidence or show that the prior decision was clearly erroneous or manifestly unjust. (*Id*. at 4-5.) Ukofia did not appeal the denial of the motion.

Ukofia's present motion to amend is simply more of the same. He offers no new factual allegations against Drengson, no evidence to support a claim of liability against Drengson, and no argument that Drengson's dismissal was clearly erroneous or manifestly unjust. Furthermore, the deadline to amend pleadings expired on June 15, 2010, and Ukofia has not shown good cause to extend the deadline. *See* Fed. R. Civ. P. 16(b)(4); D. Minn. LR 16.3(a). The Court therefore recommends that Ukofia's Motion for Leave to File a Third Amended Complaint be denied.

## II. Defendants' Motion to Dismiss and for Summary Judgment

Defendants' motion has two components. First, the Five Other Unknown Agents of the Bureau of Immigration and Customs Enforcement ("Agents") move to dismiss Ukofia's claims against them for lack of personal jurisdiction, insufficient process, and insufficient service of process, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5). Second, the Agents and Defendant Kenneth Olson ("Olson") move for summary judgment under Federal Rule of Civil Procedure 56 on the basis of qualified immunity.

### A. The Agents' Motion to Dismiss

When a United States official is sued in his or her individual capacity, Federal Rule of Civil Procedure 4(i)(3) requires the person to be served with a copy of the summons and complaint as provided by Rule 4(e), 4(f), or 4(g), in addition to the requisite service on the United States. Ukofia never fulfilled this requirement. Instead, he maintains, service should be deemed sufficient because

of the Agents' association with former defendant Scott Baniecke. (Pl.'s Mem. Opp. Mot. Summ. J. at 9.) Unfortunately for Ukofia, this connection does not suffice to perfect service. Absent compliance with the service requirements of Rule 4(e), 4(f), or 4(g), service of process is not effective.

Ordinarily, when a party has not met the service-of-process requirements, the Court will grant it a reasonable time to effect proper service. But in light of the recommended disposition for summary judgment below, this may be futile. If Ukofia's claim against the Agents survives summary judgment, however, he should be granted a short amount of time to perfect service.

### B. The Motion for Summary Judgment

The lone remaining claim in this case is an individual capacity, excessive force claim against Olson and the Agents brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). All of Ukofia's other claims were dismissed on February 17, 2010. (Order at 1-2, Feb. 17, 2010; Doc. No. 49.) Olson and the Agents now seek summary judgment on the basis of qualified immunity.

#### 1. Relevant Facts[1]

Ukofia was ordered removed from the United States by an immigration judge on May 29, 2008, because of a conviction for an aggravated felony. (R&R at 1, Jan. 19, 2010; Doc. No. 43.) The Bureau of Immigration and Customs Enforcement (ICE) deemed him a possible flight risk and placed him into custody at the Sherburne County Jail pending removal. (*Id.*) Ukofia's challenges to removal were denied, and he was deported to his native Nigeria on March 10, 2009. (*Id.* at 2-3; First Olson Decl. ¶ 9, Aug. 13, 2009.)

---

[1] The record before the Court consists almost entirely of declarations and evidence submitted by Defendants. Ukofia did not submit any evidence in opposition to the motion for summary judgment.

Olson is a deportation officer with ICE who managed Ukofia's case after he was ordered removed. (Second Olson Decl. ¶¶ 2, 4, Sept. 15, 2010.) Under ICE's detention and removal policy, individuals who are in custody are required to wear leg restraints while at the ICE field office in St. Paul. (*Id.* ¶ 6.) Olson had advised Ukofia of this requirement several times. (*Id.*)

On December 18, 2008, Ukofia was transported without leg restraints from the Sherburne County Jail to the St. Paul field office to complete some paperwork. (*Id.* Ex. A.) When Olson asked Ukofia why he was not wearing leg restraints, Ukofia responded that his leg was injured. (*Id.*) Olson called the Sherburne County Jail Medical Unit to verify this information, and a staff member said that Ukofia was not medically restricted from wearing leg restraints. (*Id.*) Olson told Ukofia he would have to wear the restraints in accordance with ICE policy. (*Id.*)

Ukofia became argumentative and belligerent and refused to allow Olson to apply the restraints. (*Id.*; Rodkewich Decl. ¶ 6 & Ex. A, Sept. 15, 2010.) He disobeyed commands to stand, and he physically resisted other ICE officers who arrived to assist Olson. (First Olson Decl. ¶ 14; Second Olson Decl. Ex. A.) Four officers placed Ukofia on the ground in a prone position, while Ukofia continued to resist. (First Olson Decl. ¶ 14.) The officers then applied a pressure point technique to Ukofia's thigh several times and applied leg restraints and handcuffs. (Rodkewich Decl. ¶ 6; Navarro Decl. ¶ 6, Sept. 16, 2010.) Olson did not observe any signs of injury after the incident, nor did Ukofia say he was injured or ask for medical attention. (Second Olson Decl. Ex. A.) Agent Navarro decided that Ukofia should be returned to the Sherburne County Jail as soon as possible to avoid further disruption in the holding area, and Ukofia left the area unassisted. (*Id.*) Agent Navarro also asked Ukofia if he would like to be examined by a nurse at the jail, and Ukofia agreed. (First Olson Decl. ¶ 15.)

Cari Bancroft is a registered nurse at the Sherburne County Jail, who evaluated Ukofia when he returned. (Bancroft Decl. ¶¶ 2, 3, 6, Sept. 15, 2010.) Ukofia complained of neck, rib, and back pain, and of lumps on both temples. (*Id.* ¶ 7 & Ex. A.) Notably, he did not say that his ankle, elbow, or wrist hurt. (*Id.* Ex. A.) Ukofia did not appear distressed, but laughed, walked without difficulty, and appeared comfortable. (*Id.*) Bancroft did not see any bruising or trauma, other than a one-inch scrape on Ukofia's shin and pea-sized bumps on his temples. (*Id.*) Bancroft bandaged the scrape and authorized Ukofia to take Tylenol for five days. (*Id.*)

Dr. Todd Leonard examined Ukofia at a follow-up visit ten days later, and Ukofia described ankle, elbow, and wrist pain. (*Id.* Ex. B.) Ukofia described his ankle pain as constant, mild in severity, moderately intense, and sharp; his elbow pain as deeply uncomfortable; and his wrist pain as constant and sharp. (*Id.*) Dr. Leonard noted mild swelling in the right ankle, a decreased range of motion in Ukofia's wrist and ankle, and pain with movement in his elbow, wrist, and ankle. (*Id.*) He diagnosed Ukofia with a muscular or tendon strain in his elbow and a mild sprain in his wrist. (*Id.*) Ukofia was prescribed acetaminophen. (*Id.*)

An x-ray of Ukofia's elbow, wrist, and ankle showed minimal swelling of the ankle, no findings regarding the wrist, and a small osteophytic change of the elbow. (*Id.* Ex. C.) Dr. Leonard approved Ukofia for a physical therapy appointment, and Ukofia was assessed at the NovaCare Rehabilitation Center on January 27, 2009. (*Id.* ¶ 10 & Ex. D.) Ukofia complained primarily of elbow pain when he made a fist or lifted an object. (*Id.* Ex. D.) The therapist recommended a home exercise program, application of ice to alleviate pain, and no further skilled care. (*Id.* Ex. D, E.)

### 2. Standard for Summary Judgment

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Chial v. Sprint/United Mgmt. Co.*, 569 F.3d 850, 853-54 (8th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). The moving party bears the burden to show that the material facts are not in dispute. *Mems v. City of St. Paul*, 224 F.3d 735, 738 (8th Cir. 2000). The nonmoving party may not respond with mere allegations or denials but must present specific facts creating an authentic issue for trial. *Anderson*, 477 U.S. at 256. The evidence and resulting inferences are viewed in the light most favorable to the nonmoving party. *Graves v. Ark. Dep't of Fin. & Admin.*, 229 F.3d 721, 723 (8th Cir. 2000).

### 3. Ukofia's Rule 56(f) Request

In opposing summary judgment, Ukofia claims he does not have sufficient evidence to respond to the motion for summary judgment, and he asks for additional time to complete discovery. Federal Rule of Civil Procedure 56(f) permits a party to oppose a motion for summary judgment by submitting an affidavit, showing "for specified reasons, it cannot present facts essential to justify its opposition."

The only facts Ukofia identifies as unavailable are the Agents' names. But this information could have been obtained long ago. Olson identified four of the Agents by last name in his Declaration of August 13, 2009, but Ukofia did not serve interrogatories or other discovery requests to learn their first names, addresses, or other information. The discovery period in this case lasted four months, from March 16, 2010 through July 15, 2010, which gave Ukofia ample time to take this discovery.

The docket does contain entries indicating that Ukofia attempted to obtain documents and video images under the Freedom of Information Act ("FOIA"). (Doc. Nos. 63, 65, 67.) Ukofia

6

claims he mailed these requests to counsel for Olson and the Agents. (Doc. Nos. 57, 57-1.) However, these requests do not comply with FOIA. A person requesting records from a division of the Department of Homeland Security must write "directly to the Department component that maintains those records," 6 C.F.R. § 5.3(a), not to the government official being sued or the official's attorney. In addition, FOIA was not intended to be used as a substitute for discovery. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). As to whether counsel should have treated the FOIA requests as discovery requests, this issue is not properly before the Court. Ukofia has not filed a motion to compel discovery, nor has he submitted counsel's response, if any, to the Court.

Most importantly, however, Ukofia has not explained why the names of the Agents are essential to opposing summary judgment. Ukofia has not claimed he was unable to depose the Agents or serve written discovery on them, nor has he asked for an extension of the discovery period to complete these tasks. Four of the Agents filed declarations more than two months ago, divulging their full names and their participation in the relevant events, but Ukofia did not follow up with motion practice, discovery requests, or service forms. In light of all the above, the Court concludes that a continuance or denial under Rule 56(f) is not appropriate, and thus turns to the merits of the excessive force claim.

### 4. Excessive Force

To determine whether Olson and the Agents are entitled to qualified immunity, the Court asks two questions: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Vaughn v. Greene County*, 438

7

F.3d 845, 850 (8th Cir. 2006). The Court may answer either question first, depending on the facts of the case. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). If the first question is answered in the negative, Olson and the Agents will be entitled to qualified immunity, and the Court need not proceed to the second step. *See Reasonover v. St. Louis County*, 447 F.3d 569, 580-81 (8th Cir. 2006). The facts of the present case compel the Court to first decide whether Ukofia was deprived of a constitutional right.

As an immigration detainee, Ukofia's status was similar to that of a pretrial detainee. *See Porro v. Barnes*, ---F.3d---, 2010 WL 4456990, at *3 (10th Cir. Nov. 9, 2010); *Dahlan v. Dep't of Homeland Sec.*, 215 F. App'x 97, 100 (3d Cir. 2007); *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000). A pretrial detainee's excessive force claim is analyzed under a due process standard, rather than the "cruel and unusual punishment" paradigm of the Eighth Amendment. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). Due process requires that the use of force "must be necessarily incident to administrative interests in safety, security and efficiency." *Id.* An officer's conduct violates due process if it was punitive, not reasonably related to a legitimate governmental purpose, or rationally related but nonetheless excessive. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). This standard incorporates the Fourth Amendment's "objective reasonableness" test. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

To begin, the Court notes that Ukofia had no right to be free of leg restraints while in ICE custody. Leg restraints are routinely used in custodial settings, and ICE policy requires them to be used on detainees at the St. Paul field office. Olson and the Agents first asked Ukofia to voluntarily submit to the application of restraints. When he claimed he could not wear them due to a leg injury, the officers checked with a Sherburne County Jail staff member, who said Ukofia had no such medical restriction. Ukofia then became uncooperative and argumentative, and the agents had no

8

alternative but to apply the restraints by placing Ukofia in a prone position on the floor, holding him down, and applying a pressure point technique to his leg. This conduct was not punitive, but was rationally related to the legitimate aims of ensuring safety and maintaining order at the ICE facility. The minor injuries suffered by Ukofia were necessarily incident to safeguarding those legitimate interests. Finally, the minor nature of the injuries further suggests that the amount of force applied was not excessive. *See Wilkins v. Gaddy*, 130 S. Ct. 1175, 1180 (2010). The Court therefore concludes that Olson and the Agents did not deprive Ukofia of a constitutional right and are entitled to qualified immunity.

## III. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Kenneth Olson and the Five Unknown Agents' Motion for Summary Judgment (Doc. No. 78) be **GRANTED**;

2. The remaining *Bivens* excessive force claim against Defendants Kenneth Olson and the Five Unknown Agents be **DISMISSED WITH PREJUDICE**;

3. Plaintiff's Motion for Leave to File a Third Amended Complaint (Doc. No. 91) be **DENIED**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: November 23, 2010

                                               s/ *Jeanne J. Graham*
                                                JEANNE J. GRAHAM
                                                United States Magistrate Judge

## NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **December 8, 2010**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.